UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED

2006 MAY 16 P 3: 42

CLERK US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
JACKSONVILLE FLORIDA

| | | |
|---|---|---|
| J.C. RENFROE & SONS, INC. AND ANNE RENFROE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.: |
| | ) | |
| RENFROE JAPAN CO., LTD., JAPAN CLAMP COMPANY, LTD., SORI INDUSTRIES, INC., YUJI ITOH AND HIROYUKI SORI, | ) | 3:06-cv-451-J-32mmH |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, J.C. Renfroe & Sons, Inc. ("Renfroe & Sons") and Anne Renfroe sue defendants, Renfroe Japan Co., Ltd. ("Renfroe Japan"), Japan Clamp Company, Ltd. ("Japan Clamp"), Sori Industries, Inc. ("Sori Industries"), Yuji Itoh and Hiroyuki Sori and allege:

1.      Renfroe & Sons is a Florida corporation having its principal place of business t 1926 Spearing Street, Jacksonville, Florida 32201.

2.      Anne Renfroe is a principal of Renfroe & Sons and resides in Florida.  Anne Renfroe is not a minor and is not an active member of the United States Military.

3.      Renfroe Japan is a Japanese corporation having its principal place of business at 4-5-7, Jonanjima, Ohta-ku, Tokyo 143-0002 Japan.

4.      Japan Clamp is a Japanese corporation having its principal place of business at 4-5-7, Jonanjima, Ohta-ku, Tokyo 143-0002 Japan.

5.    Sori Industries is a Japanese corporation having its principal place of business at 610-1 Hamadagou, Togitsu-cho, Nishisonogi-gun, Nagasaki 851-2102 Japan.

6.    Yuji Itoh is an individual resident in Japan having his residential address at 3-1-24-436, Sengoku, Koto-ku, Tokyo, Japan.

7.    Hiroyuki Sori is an individual resident in Japan having his residential address at 4-5-7 Nameshi, Nagasaki-shi, Nagasaki 852-8061 Japan.

## FACTUAL BACKGROUND

### Renfroe & Sons in Japan

8.    Since 1940, Renfroe & Sons has been engaged in the manufacture and sale of steel lifting devices, clamps and other related devices.  References to such steel lifting devices, clamps and other related devices bearing the Renfroe brand are referred to herein as "Renfroe-brand Products."

9.    Renfroe & Sons has been selling Renfroe-brand Products in Japan for over 40 years.  In December 1986, Renfroe & Sons established Renfroe Japan as its exclusive licensee to manufacture (or secure the manufacture of) and sell Renfroe-brand Products in Japan.

10.    Anne Renfroe has been President of Renfroe & Sons and a board member and shareholder of Renfroe Japan since her husband, Charles Renfroe, died on November 8, 1999.  Charles Renfroe had been President of Renfroe & Sons from 1954 until his death in 1999, and he had been a board member and shareholder of Renfroe Japan from 1986 until his death.

11.     On information and belief, Yuji Itoh and Hiroyuki Sori, together with their direct family members, own a controlling block of over sixty five percent (65%) of the outstanding shares of Renfroe Japan. Anne Renfroe is a minority shareholder of Renfroe Japan with holdings of twenty five percent (25%) of the outstanding shares.

12.     Yuji Itoh is the chairman of the board of directors of Renfroe Japan. Hiroyuki Sori is the President of Renfroe Japan.

13.     Hiroyuki Sori is the President of Japan Clamp and Sori Industries. On information and belief, Hiroyuki Sori owns seventy percent (70%) of all outstanding shares of Japan Clamp and owns or controls (through his family's holdings) ninety-eight percent (98%) of all outstanding shares of Sori Industries. Due to Hiroyuki Sori's control over Japan Clamp and Sori Industries, they are sometimes referred to in this complaint as the "Sori-controlled entities" or "Sori-controlled affiliates."

14.     For the period relevant to this complaint, Sori Industries manufactured all Renfroe-brand Products made available for sale in Japan.

15.     Renfroe & Sons and Renfroe Japan entered into a license agreement under which Renfroe & Sons permitted Renfroe Japan to manufacture, sell, distribute and otherwise commercialize Renfroe-brand Products during the period October 31, 2002 through October 31, 2005 (the "License Agreement").

16.     The manufacture of Renfroe-brand Products in Japan has always required close coordination with the U.S. operations of Renfroe & Sons in order to incorporate its proprietary information and know-how into such products. The activities related to the

manufacture, marketing, sales and commercialization of Renfroe-brand Products in Japan under the License Agreement involved such close coordination with Renfroe & Sons.

17.     Yuji Itoh and his son Yuta Itoh spent significant periods of time training at Renfroe & Sons' headquarters in Jacksonville, Florida.  Yuji Itoh trained at Renfroe & Sons' headquarters in Jacksonville, Florida for approximately one year.  Yuta Itoh likewise spent approximately one year training at Renfroe & Sons' headquarters.  During the time of their training at Renfroe & Sons' headquarters, both Yuji Itoh and Yuta Itoh were granted and received complete access to all of Renfroe & Sons' proprietary metallurgy, proprietary industrial processes, proprietary business practices and trade secrets.

18.     On numerous other occasions, Renfroe Japan personnel spent significant periods of time at Renfroe & Sons' headquarters on matters relating to the relationship between the companies and relating to the License Agreement.  For instance, in May 2001, Morris Itoh (the brother of Yuji Itoh), Hiroyuki Sori and Yoshinao Kasai, each of Renfroe Japan, traveled to Renfroe & Sons' headquarters in Jacksonville, Florida, in order to meet with personnel from Renfroe & Sons regarding the continuing business relationship between Renfroe & Sons and Renfroe Japan and the manufacture and sale of Renfroe-brand Products in connection therewith.

19.     Renfroe & Sons provided further assistance to Renfroe Japan by disclosing certain proprietary know-how and manuals for the manufacture of Renfroe-brand Products and by lending Renfroe Japan certain proprietary fixtures and devices utilized by Renfroe & Sons in order to imprint the Renfroe-brand mark on Renfroe-brand Products.

-4-

**Yuji Itoh and Hiroyuki Sori Structure Renfroe Japan
and the Sori-Controlled Entities for a Fraudulent Purpose**

20.     On March 9, 2000, Hiroyuki Sori, Yuji Itoh, Sukemori Itoh and Yoshinao Kasai, the four remaining directors of Renfroe Japan after the death of Charles Renfroe (until his replacement by Anne Renfroe), held a meeting in order to consider a recommendation by Hiroyuki Sori to direct all sales to customers of Renfroe-brand Products through a new company founded by Hiroyuki Sori called "Nippon Clamp, K.K." The translation of this name into English is Japan Clamp.

21.     The board of directors of Renfroe Japan considered and approved Hiroyuki Sori's recommendation to sell all Renfroe-brand Products through Japan Clamp rather than continued sales through Renfroe Japan; such sales by Japan Clamp began in or around April 2000.

22.     After the board's approval in March 2000 of the new arrangement involving sales to customers by Japan Clamp, Yuji Itoh and Hiroyuki Sori directed the relocation of Renfroe Japan's operations to the same business premises from which Japan Clamp operated.

23.     Anne Renfroe, as a shareholder of Renfroe Japan, was subsequently informed by letter from Renfroe Japan's board regarding its approval of the restructuring of Sori-controlled entities to permit sales to be made through Japan Clamp rather than through Renfroe Japan. She objected to the arrangement and to the fact that, as a shareholder of Renfroe Japan, she had never been informed that such an arrangement was being considered.

24.     In mid-2000, following the general meeting of the shareholders of Renfroe Japan, Anne Renfroe and Ron Raymond (Chief Executive Officer of Renfroe & Sons) met

with Hiroyuki Sori to discuss the arrangement involving the sale of Renfroe-brand Products by Japan Clamp.  At that meeting, Hiroyuki Sori assured Anne Renfroe and Ron Raymond that the new arrangement would not decrease the royalty payments Renfroe & Sons received from Renfroe Japan.

25.     At the same meeting, Hiroyuki Sori stated that the new arrangement with Japan Clamp was necessary in order to satisfy certain requests by Renfroe Japan's bank.  No documentation of such requests have ever been made available by Defendants despite repeated requests by Plaintiffs.

26.     Renfroe & Sons and Renfroe Japan were unable reach agreement regarding a new licensing arrangement in the years directly following the restructuring of Renfroe Japan's operations by Yuji Itoh and Hiroyuki Sori due to, among other things, Renfroe & Sons' objection of sales to its customers through any entity other than Renfroe Japan.  The parties instead extended the licensing agreement that had been in place since December 1992.

27.     After repeated requests by Renfroe & Sons, Yuji Itoh and Hiroyuki Sori proposed a new licensing agreement approximately mid-year in 2002.  Contrary to Yuji Itoh's and Hiroyuki Sori's earlier express statements to Anne Renfroe and/or her representatives that the royalty rate would not decrease under the new agreement, the proposal instead resulted in substantially reduced royalties.  Hiroyuki Sori also threatened to terminate any relationship with Renfroe & Sons based upon his incorrect assumption that the Sori-controlled entities could sell steel lifting devices, clamps and other related devices that did not bear the Renfroe-brand mark but which were based upon Renfroe & Sons' proprietary information.

28.     Relying on Hiroyuki Sori's representations that the royalty rate would not be reduced under the new agreement, and to avoid forgoing sales of Renfroe-brand products altogether in Japan (and the coinciding loss of brand name recognition) Anne Renfroe agreed to the license agreement subject to certain conditions.

29.     Anne Renfroe and Renfroe & Sons insisted that Japan Clamp and Sori Industries be made parties to the agreement and that they, along with Hiroyuki Sori, individually, guarantee the performance of Renfroe Japan.  This was necessary, as Anne Renfroe stated in a letter to Yuji Itoh, due to Hiroyuki Sori's obvious conflicts of interest:

> There can be no effective oversight without an agreement including all parties.  Confusion in roles is evident where the owner of the manufacturing entity, Sori Industries[,] the third party producer of our clamps, is also President/Director of Japan Clamp LTD, and president of Renfroe Japan LTD. There is a clear conflict of interest.

30.     Yuji Itoh and Hiroyuki Sori agreed to a new license agreement that included the guarantee provision demanded by Renfroe & Sons.  This agreement had a three-year term with an effective date of October 31, 2002 (the "Amended License Agreement").

31.     Yuji Itoh and Hiroyuki Sori failed to disclose to Plaintiffs that for several years they had participated in and approved the conversion of assets of Renfroe Japan for the personal benefit of certain of its shareholders, depriving the other shareholders, including Anne Renfroe, of the value of such assets.  Based upon information and belief, and as a result of an investigation into Renfroe Japan's finances conducted by a public audit firm at Renfroe & Sons' direction, Renfroe & Sons alleges that Renfroe Japan's management and board,

including Yuji Itoh and Hiroyuki Sori, had ordered the conversion of assets in order to purchase a golf membership, luxury automobiles, real estate and a private residence for personal benefit of only certain shareholders.  No explanation of these purchases has ever been accounted for or otherwise explained either by Yuji Itoh or Hiroyuki Sori, despite several demands by Anne Renfroe as a shareholder of Renfroe Japan.

32.     Renfroe & Sons also alleges the loss of Renfroe Japan's inventory amounting to several hundred thousand dollars as a result of Yuji Itoh's and Hiroyuki Sori's mismanagement of Renfroe Japan and their agreed-upon manipulation of the Sori-controlled entities to ensure any losses incurred by Japan Clamp and Sori Industries were accounted for on Renfroe Japan's books despite the fact that Japan Clamp and Sori Industries were responsible for such losses.

33.     It became clear after the investigation into the activities of Yuji Itoh and Hiroyuki Sori that the structuring of Renfroe Japan, Japan Clamp and Sori Industries was necessary to mask the enormous losses that had resulted from their mismanagement and diversion of income for personal benefit.

34.     Anne Renfroe has requested documentation on several occasions of the self-dealing transactions in which Yuji Itoh and Hiroyuki Sori engaged that led to the financial deterioration of Renfroe Japan.  Neither Yuji Itoh nor Hiroyuki Sori has provided any such documentation.  Rather, Hiroyuki Sori has claimed as recently as June 18, 2005, in a letter to Anne Renfroe, that all relevant documents have been destroyed (despite his being able to produce at the same time the minutes of a Renfroe Japan board meeting dated March 2000).

35.     The personal benefits both Yuji Itoh and Hiroyuki Sori received at the expense of Renfroe Japan are the direct and proximate result of their joint and agreed upon activities to manipulate Renfroe Japan and the Sori-affiliated entities in order to deprive Renfroe & Sons of economic benefits it expected and is entitled to under the License Agreement and Amended License Agreement.

### Continued Breaches of License Agreement Directed by Hiroyuki Sori Following the Expiration of the License Agreement

36.     Throughout the entire term of the Amended License Agreement, which expired by its terms on October 31, 2005, Renfroe Japan has been unable to pay royalties in full or on a timely basis to Renfroe & Sons.  Such breaches of the Amended License Agreement are due to mismanagement and self-dealing by Yuji Itoh and Hiroyuki Sori.

37.     The failure by Yuji Itoh and Hiroyuki Sori to adequately respond to or otherwise address any of the issues raised both by Renfroe & Sons as the licensor under the license agreements and by Anne Renfroe as a shareholder of Renfroe Japan contributed to the decision by Renfroe & Sons not to renew a license agreement either with Renfroe Japan or any of the Sori-controlled affiliates.

38.     On October 26, 2005, Renfroe & Sons informed Yuji Itoh and Hiroyuki Sori, as executive officers of Renfroe Japan and the affiliated Sori-controlled entities, to preserve any remaining Renfroe-brand Products and any inventory of related items based upon Renfroe & Sons' proprietary information.  Renfroe & Sons also requested the preservation and return of all sales literature relating to Renfroe-brand Products.  Renfroe & Sons made

several other demands consistent with the Amended License Agreement, including that Renfroe Japan immediately discontinue any use of the Renfroe-brand mark.

39.    On October 28, 2005, Anne Renfroe resigned from the board of directors of Renfroe Japan.

40.    At the direction of Hiroyuki Sori, and contrary to the express provisions of the License Agreement, Renfroe Japan and Japan Clamp continued to sell Renfroe-brand Products through the remainder of 2005 and into 2006.

41.    Hiroyuki Sori finally directed Sori Industries to return to Renfroe & Sons some unusable inventory in February 2006.  This took place only after Hiroyuki Sori first directed such inventory to be shifted around to the various Sori-controlled affiliates in an attempt to evade the immediate return of the inventory to Renfroe & Sons as required by the License Agreement.

42.    Despite returning the unuseable inventory, Hiroyuki Sori directed that the Sori-controlled affiliates retain any and all inventory of Renfroe-brand Products that could be resold after first defacing the Renfroe-brand mark on such products.  On information and belief, Japan Clamp is currently selling such inventory of defaced Renfroe-brand Products under its own name. The products sold by Japan Clamp have identical specifications and are made from the same materials  as Renfroe-brand Products.  They are also supported by the same technical documentation as the Renfroe-brand Products.  Each of these actions directed by Hiroyuki Sori is directly contrary to the express provisions of the License Agreement.

## Jurisdiction and Venue

43.     Renfroe & Sons is incorporated under the laws of the State of Florida and has its principal place of business therein.  Anne Renfroe is a citizen of the State of Florida.  Yuji Itoh and Hiroyuki Sori are citizens of Japan.  Renfroe Japan, Japan Clamp and Sori Industries are incorporated under the laws of Japan and have their principal places of business therein. Accordingly, the parties are diverse as contemplated by 28 U.S.C. § 1332 and the amount in controversy is in excess of $75,000.

44.     The license agreements at issue were substantially negotiated and drafted in the State of Florida, and Defendants have had continuous and substantial contacts to the State of Florida prior to and during the relevant contracting period.

45.     Defendants expressly consented in the license agreements to the jurisdiction of this Court.

46.     In accordance with the foregoing facts and others relevant to this litigation, this Court has jurisdiction over both the persons named herein and the subject matter hereof.

47.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(a)(2) and (3).

## COUNT I

### Breach of Contract (Sublicensing to Unauthorized Party)

48.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

-11-

49.     Throughout the entire term of the License Agreement and the Amended License Agreement, Yuji Itoh and Hiroyuki Sori permitted Renfroe Japan to sell Renfroe-brand Products directly to Japan Clamp. Throughout the same period, Hiroyuki Sori directed Japan Clamp to market, distribute, sell and otherwise commercialize such Renfroe-brand Products.

50.     Renfroe Japan's sale of Renfroe-brand Products to Japan Clamp under the license agreements were without the prior written consent of Renfroe & Sons before sublicensing, contracting or otherwise allowing any person, firm, corporation or other business entity to use the Licensed Marks to market, distribute, sell or otherwise commercialize Renfroe-brand Products.

51.     Plaintiffs have been injured by Defendants' breach of the license agreements and Defendants' bad faith conduct, and Plaintiffs are entitled to recover damages resulting from Defendants' breach in an amount to be established at trial.

WHEREFORE, Plaintiffs demand judgment in its favor and against defendants (i) for money damages in an amount to be determined at trial; and (ii) such other relief as the Court deems appropriate.

## COUNT II

## Breach of Contract (Insufficient Payment of License Fees)

52.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

53.     Throughout the entire term of the License Agreement, Renfroe Japan has failed and otherwise refused to pay license fees based upon sales of Renfroe-brand Products either by it or by its affiliates, sublicensees, contractors or other persons, firms or corporations in the amounts specified.  In those instances where license fees were actually paid by Renfroe Japan to Renfroe & Sons, such fees were routinely delayed by several months or longer.

54.     Under the license agreements, Renfroe Japan, its affiliates and any sublicensees, contractors or other persons, firms, corporations or business entities are required to pay to Renfroe & Sons specified license fees based upon their gross sales of Renfroe-brand Products on or before the fifteenth day following the month in which such licensees fees are invoiced by such entity or person.

55.     Plaintiffs have been injured by Defendants' breach of the license agreements and Defendants' bad faith conduct, and Plaintiffs are entitled to recover damages proximately resulting from Defendants' breach in an amount to be established at trial.

## COUNT III

### Breach of Contract (Failure to Maintain Complete Books and Records

56.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

57.     Pursuant to the License Agreement and Amended License Agreement, Renfroe & Sons directed an audit of Renfroe Japan's books and records in order to determine

the amount of the deficiency in license fees owed to Renfroe & Sons due to Renfroe Japan's failure to pay such fees as required.

58.    On August 15, 2005, a public audit firm conducted an audit of Renfroe Japan's books and records. The audit identified a substantial deficiency in the license fees Renfroe Japan paid to Renfroe & Sons based upon actual sales to customers. The amount of the deficiency exceeds two percent of the amount of license fees Renfroe Japan actually owes Renfroe & Sons.

59.    In the event of a deficiency in license fees paid under the Amended License Agreement, Defendants are required to pay the amount of such deficiency plus interest at the rate of 10% thereon. Defendants are also obligated to pay for the cost of any audit conducted where the deficiency exceeds two percent of the amount of license fees actually owed.

60.    Plaintiffs are entitled to recover the amount of the deficiency in license fees plus interest thereon and associated accounting expenses resulting from Defendants' failure to pay license fees owed to Renfroe & Sons and any other injury suffered by Plaintiffs in an amount to be established at trial.

## COUNT IV

### Breach of Contract (Sale of Unlicensed Products)

61.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

62.    On October 14, 2005, U.S. counsel for Renfroe & Sons informed Yuji Itoh and Hiroyuki Sori (as well as the entities they control and/or manage) that Renfroe & Sons

would not renew the Amended License Agreement, which was set to expire on October 31, 2005, either with Renfroe Japan or with any of its affiliates.

63.     Despite such notice from Renfroe & Sons that it would not renew the Amended License Agreement, Defendants continued to market, distribute, sell and commercialize Renfroe-brand Products beyond October 31, 2005.

64.     The Amended License Agreement requires, upon its expiration, that Renfroe Japan and its affiliates immediately cease using the Renfroe-brand mark in any manner (including the marketing or sale of Renfroe-brand Products) and that Defendants surrender or destroy any materials bearing such marks as directed by Renfroe & Sons.

65.     Defendants continued marketing, distributing, selling and commercializing Renfroe-branded Products after October 31, 2005 and therefore breached their obligations under the License Agreement and caused Renfroe & Sons to incur damages in an amount to be established at trial.

## COUNT V

## Breach of Contract (Sale of Unmarked Clamps)

66.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

67.     On information and belief, Defendants have distributed, sold and commercialized steel lifting devices, clamps and other related and similar devices during the period covered by the License Agreement and Amended License Agreement without affixing, embossing, imprinting or otherwise incorporating the Renfroe-brand mark thereon.

Defendants did not receive prior approval from Renfroe & Sons for such distribution, sales and commercialization of unmarked products.

68.     The License Agreement prohibits the distribution, sale or commercialization of steel lifting devices, clamps and other related and similar devices not bearing the Renfroe-brand mark by Renfroe Japan or its affiliates or sublicencees without prior approval by Renfroe & Sons.  The License Agreement also requires that Renfroe Japan and any of its affiliates use their best efforts to preserve and enhance the Renfroe-brand marks.

69.     Defendants breached the License Agreement and Amended License Agreement by distributing, selling and commercializing steel lifting devices and clamps not bearing the Renfroe-brand mark and by failing to preserve and enhance the Renfroe-brand mark.  Plaintiffs have been injured as a result of Defendants' breaches and are entitled to recover damages in an amount to be established at trial.

## COUNT VI

### Breach of Guaranty

70.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

71.     Hiroyuki Sori, individually, Japan Clamp and Sori Industries guaranteed, jointly and severally, the performance of all obligations to be undertaken by Renfroe Japan and its affiliates under the License Agreement.  The guarantee expressly includes all of Renfroe Japan's (and its affiliates') performance obligations and financial obligations under the License Agreement.

-16-

72.     The performance and financial obligations of Renfroe Japan's guarantors under the Amended License Agreement are separate from and in addition to any other obligations they have under the Amended License Agreement.

73.     None of Hiroyuki Sori, Japan Clamp or Sori Industries has taken any action during the term of the Amended License Agreement or since its expiration to guarantee Renfroe Japan's (or its affiliates') performance and financial obligations, including but not limited to its obligation to exercise its best efforts in the sale of Renfroe-brand Products and its obligation to accurately report and account for gross sales of Renfroe-brand Products and pay the specified license fees in connection therewith.  Nor did any of such guarantors take any actions either to halt the unapproved transfer of inventory of Renfroe-brand Products to Japan Clamp or to halt the subsequent sale and commercialization of such Renfroe-brand Products.

74.     As a result of the failure and refusal by each of Hiroyuki Sori, Japan Clamp and Sori Industries to guarantee all performance and financial obligations to be undertaken by Renfroe Japan and its affiliates under the Amended License Agreement, Plaintiffs have been injured in an amount to be determined at trial.

## COUNT VII

### Breach of Contract (Sale of Unlicensed Products)

75.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

76.     Following the decision by the board of directors of Renfroe Japan to approve the sale of Renfroe-brand Products to Japan Clamp, which in turn would sell such Renfroe-brand Products directly to customers, Yuji Itoh and Hiroyuki Sori directed the transfer of the remaining inventory of Renfroe-brand Products to Japan Clamp and Sori Industries.

77.     The transfer of all inventory of Renfroe-brand Products from Renfroe Japan to Japan Clamp was effected without the necessary prior approval of Renfroe & Sons.

78.     Japan Clamp and Sori Industries subsequently took control of the inventory of Renfroe-brand Products and exercised control over it in a manner inconsistent with Renfroe Japan's ownership of it and Renfroe & Sons rights in it.  Such unlawful control resulted in injury to Renfroe & Sons and personal benefit to Yuji Itoh and Hiroyuki Sori.

79.     As a direct and proximate result of Defendants' conversion of the inventory of Renfroe-brand Products for the personal benefit of Yuji Itoh and Hiroyuki Sori, Plaintiffs have sustained damages including, without limitation, diminished value of such property, lost income, loss of capital and profits, loss of license fees and other damages in an amount to be determined at trial.

## COUNT VIII

### Conversion (Second Count)

80.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

81.     On October 26, 2005, Renfroe & Sons instructed Hiroyuki Sori in his capacity as executive officer of Renfroe Japan, Japan Clamp and Sori Industries to return the remaining inventory of Renfroe-brand Products.

82.     Hiroyuki Sori has refused to return all inventory of Renfroe-brand Products held by Renfroe Japan, Japan Clamp and Sori Industries.  He has instead directed the return only of unusable and defective inventory.

83.     Hiroyuki Sori has recently directed Sori Industries to deface the Renfroe-brand mark on any remaining usable and/or resellable inventory or Renfroe-brand Products. This inventory has been converted for sale by Japan Clamp for the benefit of Hiroyuki Sori and the Sori-controlled entities despite Renfroe & Sons being the legal owner of such inventory.

84.     Hiroyuki Sori's (and the Sori-controlled entities') wrongful exercise of control over the remaining inventory of Renfroe-brand Products and his directing the defacing of the Renfroe-brand mark on such remaining inventory has resulted in damages to Renfroe & Sons, including, without limitation, diminished value of such property, lost income, loss of capital and profits, loss of license fees and other damages in an amount to be determined at trial.

## COUNT IX

### Fraud

85.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

86.    Yuji Itoh and Hiroyuki Sori induced Plaintiffs to execute the Amended License Agreement by representing that royalties to be paid to Renfroe & Sons would not decrease from previous levels even though Yuji Itoh and Hiroyuki Sori had already agreed upon a scheme whereby Renfroe Japan would sell Renfroe-brand Products to Japan Clamp rather than directly to its customers.

87.    At the time of making such representation, Yuji Itoh and Hiroyuki Sori knew that their representations regarding royalties to be paid to Renfroe & Sons were false. Their intent was to calculate license fees based only upon the low internal transfer price (calculated at the direction of Yuji Itoh and Hiroyuki Sori) that Renfroe Japan charged Japan Clamp for purchases of Renfroe-brand Products.

88.    Notwithstanding Yuji Itoh's and Hiroyuki Sori's erroneous interpretation of the Amended License Agreement, their intent was to fraudulently induce Renfroe & Sons to execute the Amended License Agreement based upon their false representations. Renfroe & Sons executed the Amended License Agreement in reliance upon Yuji Itoh's and Hiroyuki Sori's false statements regarding the amount of the royalty payment.

89.    Plaintiffs have been injured as a result of the false representations made by Yuji Itoh and Hiroyuki Sori in an amount to be determined at trial.

## COUNT X

### Interference with Contractual Relations

90.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

91.     The License Agreement and the Amended License Agreement are binding contracts that set forth the method by which payment of license fees are to be made to Renfroe & Sons from Renfroe Japan.

92.     Hiroyuki Sori, who was fully aware of the obligations of the parties, took actions intended to interfere with such obligations and to cause the entities he controls to breach the license agreements.  Such actions had the effect of depriving Renfroe & Sons of its justifiably expected and intended economic benefits.

93.     There is no valid justification or privilege for the actions directed and/or taken by Hiroyuki Sori.

94.     Plaintiffs have been injured as a result of the actions taken by Hiroyuki Sori in an amount to be determined at trial.

## COUNT XI

### Interference with Advantageous Business Relationship

95.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

96.     Prior to the formation of Japan Clamp, Renfroe Japan had a business relationship with numerous third-party customers with which it marketed, sold and commercialized Renfroe-brand Products.

97.     Renfroe & Sons benefitted from the sale by Renfroe Japan of Renfroe-brand Products because such method of sale enhanced product recognition and clearly identified the origin of the products sold.

98.     Yuji Itoh and Hiroyuki Sori had knowledge of all business relationships existing between Renfroe Japan and its customers and the associated goodwill attached to the Renfroe brand through its direct sale to such customers by Renfroe Japan.

99.     Yuji Itoh and Hiroyuki Sori intentionally and unjustifiably damaged the economic association Renfroe Japan had with its customers when they interfered with and severed such associations through their actions as alleged herein.

100.    Renfroe & Sons was injured as a result of the actions taken by Yuji Itoh and Hiroyuki Sori in an amount to be determined at trial.

## COUNT XII

### Civil Conspiracy

101.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

102.    As a result of mounting losses at Renfroe Japan caused by their self-dealing, Yuji Itoh and Hiroyuki Sori agreed in March 2000 or thereabout to devise an unlawful scheme to manipulate Renfroe Japan in a manner intended to deprive Renfroe & Sons of its expected benefit, including but not limited to specified license fees, under the License Agreement and the Amended License Agreement.

103.    In order to carry out their scheme, Yuji Itoh and Hiroyuki Sori agreed to set up an entity, Japan Clamp, which was to be controlled by Hiroyuki Sori and through which Yuji Itoh and Hiroyuki Sori were able to transfer assets and divert income from Renfroe Japan.

-22-

104.   Yuji Itoh's and Hiroyuki Sori's scheme to manipulate Renfroe Japan and the Sori-controlled entities injured Plaintiffs in an amount to be determined at trial.

## COUNT XIII

### Breach of Fiduciary Duty and Self-Dealing

105.   Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

106.   In accordance with their fiduciary duties of loyalty, care and good faith, Yuji Itoh and Hiroyuki Sori, as directors and officers of Renfroe Japan, are obligated to refrain from (i) participating in any transaction where the directors' or officers' loyalties are divided; (ii) participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the other shareholders of the corporation; and (iii) unjustly enriching themselves at the expense or to the detriment of the other shareholders.

107.   Plaintiffs allege that Yuji Itoh and Hiroyuki Sori, separately and together, in connection with transactions they directed involving Renfroe Japan, Japan Clamp and Sori Industries occurring since March 2000, violated their fiduciary duties owed to the shareholders of Renfroe Japan, including their duties of loyalty, good faith and independence, insofar as they stood on both sides of transactions involving such entities, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits not shared equally by the other shareholders of Renfroe Japan.

108.   As a result of Yuji Itoh's and Hiroyuki Sori's breaches of their duties of loyalty, good faith and independence, Renfroe & Sons was injured in an amount to be determined at trial.

## COUNT XIV

## Breach of Duty of Candor

109.   Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

110.   At all times relevant to this complaint, Yuji Itoh and Hiroyuki Sori owed each shareholder of Renfroe Japan a duty of good faith, which includes the duty to fully disclose the existence and nature of all material facts in their possession or control with respect to Renfroe Japan's operations, financial condition and otherwise.

111.   Yuji Itoh and Hiroyuki Sori breached the duty of candor and full disclosure owed by them to the shareholders of Renfroe Japan under applicable law by misrepresenting and failing to disclose material facts concerning Renfroe Japan and its operations, financial condition and otherwise.

112.   By omitting and misrepresenting material facts to Plaintiffs, Yuji Itoh and Hiroyuki Sori breached their duty of good faith, honesty and candor.  As a result of such breaches, Renfroe & Sons was injured in an amount to be determined at trial.

## COUNT XV

## **Unfair Competition**

113.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

114.    Since the Amended License Agreement expired on October 31, 2005, Japan Clamp and Sori Industries, at the direction of Hiroyuki Sori, have continued to market, distribute, sell and commercialize Renfroe-brand Products and other products based upon proprietary information derived solely from Hiroyuki Sori's (and the entities he controls) relationship with Renfroe & Sons. Hiroyuki Sori has further directed the defacing of the Renfroe-brand mark on Renfroe-brand Products.

115.    Hiroyuki Sori has directed the use of certain indications (legal names, business names, trademarks, emblems, product containers and packages) that are widely recognized among consumers as being the same or remarkably similar to those of a Renfroe-brand Product. In several instances, Hiroyuki Sori has directed the continued marketing of Renfroe-brand Products under the name "Japan Clamp" with the Renfroe-brand mark defaced and unrecognizable. Hiroyuki Sori has also directed the continued use of Renfroe-brand sales literature after first deleting the sentence on the cover of such sales literature stating "This product is manufactured in Japan under a technical assistance contract with J.C. Renfroe of the United States" (translated from Japanese) such that this sentence is no longer visible to customers.

116.   The sale and marketing techniques directed by Hiroyuki Sori are intended to cause, and have caused, confusion as to the actual source of such products, which have previously been identifiable only as Renfroe-brand Products. Such activities have resulted in injury to Renfroe & Sons in an amount to be determined at trial.

## COUNT XVI

### Trademark Infringement

117.   Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 47 above.

118.   Renfroe & Sons is the holder of certain trademarks in its name and related product characteristics.

119.   On October 26, 2005 (prior to the expiration of the Amended License Agreement on October 31, 2005), Renfroe & Sons informed Hiroyuki Sori in his official capacity for each of Renfroe Japan, Japan Clamp and Sori Industries to halt any use of the Renfroe-brand mark.

120.   Despite such prior warnings and full knowledge of Renfroe & Sons' trademarks, Hiroyuki Sori directed Japan Clamp and Sori Industries to continue their unauthorized distribution, marketing and sales of Renfroe-brand Products and products based upon Renfroe & Sons' proprietary information in a manner that is likely to be confused with the authorized sale of Renfroe-brand Products.

121.    Such continued unauthorized and unlawful sales and marketing of Renfroe-brand Products and products likely to be confused with Renfroe-brand Products have resulted in injury to Renfroe & Sons in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

### As to Counts I, II, III, IV and V

(a)    Adjudging and decreeing that Defendants are liable to Plaintiffs for breach of contract for failing to perform their obligations under the License Agreement.

(b)    Awarding damages in favor of Plaintiffs, jointly and severally as against each of Defendants, which amount shall exceed $2,500,000.00 and will be proved with certainty at the time of trial.

### As to Count VI

(a)    Adjudging and decreeing that Hiroyuki Sori, individually, Japan Clamp and Sori Industries are liable to Plaintiffs for refusing to perform the performance and financial obligations that each guaranteed under the License Agreement.

(b)    Awarding damages in favor of Plaintiffs, jointly and severally as against each of Hiroyuki Sori, individually, Japan Clamp and Sori Industries, which amount shall exceed $2,500,000.00 and will be proved with certainty at the time of trial.

## As to Counts VII, IX, X, XI, XII, XIII and XIV

(a)     Adjudging and decreeing that Yuji Itoh and Hiroyuki Sori are liable to Plaintiffs for conversion (Count VII), fraud (Count IX), interference with contractual relations (Count X), interference with an advantageous business relationship (Count XI), civil conspiracy (Count XII), breach of fiduciary duty and self-dealing (Count XIII) and breach of duty of candor (Count XIV).

(b)     Awarding damages in favor of Plaintiffs, jointly and severally as against each of Yuji Itoh and Hiroyuki Sori, which amount shall exceed $4,000,000.00 with punitive damages in an additional amount of $6,000,000.00 and will be proved with certainty at the time of trial.

## As to Count VIII

(a)     Adjudging and decreeing that Hiroyuki Sori, in his individual capacity, Japan Clamp and Sori Industries are liable to Plaintiffs for converting inventory of Renfroe-brand Products for their benefit.

(b)     Awarding damages in favor of Plaintiffs, jointly and severally as against each of Hiroyuki Sori, individually, Japan Clamp and Sori Industries which amount shall exceed $700,000.00 with punitive damages in an additional amount of $1,400,000.00 and will be proved with certainty at the time of trial.

## As to Counts XV and XVI

(a)      Adjudging and decreeing that Defendants are liable to Plaintiffs for unfair competition (Count XV) and trademark infringement (Count XVI).

(b)      Awarding damages in favor of Plaintiffs, jointly and severally as against each of Defendants, which amount shall exceed $4,000,000.00 and will be proved with certainty at the time of trial.

## Common Request (as to each of Counts I through XVI)

(a)      The damages set forth in paragraphs 123 through 132 are in the amount of $21,100,000.00.

(b)      Plaintiffs also request awarding interest to Plaintiffs and adjudging and decreeing that Plaintiffs are entitled to additional punitive damages in an amount to be specified by the trier of fact.

(c)      Assessing each of Defendants with costs and disbursements; and

(d)      Awarding to Plaintiffs such other and further relief as this Court may deem just and proper.

## Jury Demand

Plaintiffs hereby demand a trial by jury of all issues properly triable to a jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

STUTSMAN THAMES & MARKEY, P.A.

By_____
       Richard R. Thames
       Bradley R. Markey

Florida Bar Number 0718459
Florida Bar Number 0984213
50 N. Laura Street, Suite 1600
Jacksonville, Florida  32202
(904) 358-4000
(904) 358-4001 (Facsimile)

Attorneys for Plaintiffs

59429