**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

J.C. RENFROE & SONS, INC.,
and ANNE RENFROE,

        Plaintiffs,

vs.                                    Case No. 3:06-cv-451-J-32HTS

RENFROE JAPAN CO., LTD., JAPAN
CLAMP COMPANY, LTD., SORI
INDUSTRIES, INC., YUJI ITOH,
and HIROYUKI SORI,

        Defendants.

_____

**ORDER**

      This case is before the Court on Defendants Renfroe Japan Co., Ltd. and Yuji

Itoh's Motion To Dismiss (Doc. 16) and Defendants Japan Clamp Company, Ltd., Sori

Industries, Inc., and Hiroyuki Sori's Motion To Dismiss.  (Doc. 17.)  The Court also

considers Plaintiffs' response to the motions (Doc. 30), argument of counsel

presented at a hearing held on April 30, 2007 (Doc. 34), the record of which is

incorporated by reference, and the supplemental submissions filed after the hearing.

(Docs. 38, 40, 41, 42.)  The Court addresses defendants' contention that the case

should be dismissed pursuant to the doctrine of *forum non conveniens* in favor of a

Japanese forum.

## I.   **BACKGROUND**

The allegations of plaintiffs' complaint recount a Florida company's business in Japan slipping away.  (See Doc. 38 at 11 ¶ 4.)  Plaintiff J.C. Renfroe & Sons, Inc. ("Renfroe & Sons") is a Florida corporation, with its principal place of business in Jacksonville, Florida.  (Doc. 1 ("Compl.") ¶ 1.)  Since 1940, the company has been engaged in the manufacture and sale of steel lifting devices, clamps and other related devices ("Renfroe-brand products"), and "has been selling Renfroe-brand products in Japan for over 40 years."  (Id. ¶¶ 8, 9; Doc. 41 at 2.)  Plaintiff Anne Renfroe, a resident of Florida, has been president and a board member of Renfroe & Sons since 1999, succeeding her late husband.  (Compl. ¶¶ 2, 10.)

In December 1986, Renfroe & Sons established defendant Renfroe Japan Co., Ltd. ("Renfroe Japan") as its exclusive licensee to manufacture (or secure the manufacture of) and sell Renfroe-brand products in Japan.  Renfroe Japan is a Japanese corporation with its principal place of business in Tokyo.  (Compl. ¶¶ 3, 9; Docs. 38 at 10 ¶ 2; 39 at 3 ("License Agreement").)  Plaintiffs allege that defendants Yuji Itoh ("Itoh") and Hiroyuki Sori ("Sori"), both residents of Japan, together with their direct family members, own a controlling block of over sixty-five percent (65%) of the outstanding shares of Renfroe Japan; Itoh is chairman of the board and Sori is president.  Anne Renfroe is a twenty-five percent (25%) minority shareholder of Renfroe Japan.  (Compl. ¶¶ 6, 7, 11, 12; Doc. 38 at 10 ¶ 2.)  She has resigned from

Renfroe Japan's board of directors.  (Doc. 38 at 11 ¶ 6.)

Plaintiffs allege that defendant Itoh and his son spent approximately one year training at Renfroe & Sons' headquarters in Jacksonville, Florida, during which they had complete access to Renfroe & Sons' proprietary metallurgy, industrial processes, business practices and trade secrets.  (Compl. ¶ 17.)  Additional Renfroe Japan employees, including defendant Sori, allegedly traveled to Renfroe & Sons' Jacksonville headquarters for meetings and Renfroe & Sons provided assistance to Renfroe Japan by disclosing certain proprietary know-how and manuals for the manufacture of Renfroe-brand products and the imprinting of the Renfroe-brand mark on products.  (Id. ¶¶ 18, 19.)

On March 9, 2000, after the death of Anne Renfroe's husband, Sori and Itoh, directors of Renfroe Japan, met and approved Renfroe Japan's selling all Renfroe-brand products, starting in April 2000,  through a new company founded by Sori, defendant Japan Clamp Company, Ltd. ("Japan Clamp"), a Japanese corporation with its principal place of business in Tokyo.   Renfroe Japan and Japan Clamp operate at the same location. (Compl. ¶¶ 4, 20, 21, 22; Doc. 38 at 11 ¶¶ 3, 5.)  Though Anne Renfroe believed the new arrangement cut her and Renfroe & Sons out of the sales, marketing and distribution of Renfroe-brand products in Japan, in mid-2000, defendant Sori assured Anne Renfroe that the new arrangement with Japan Clamp would not decrease royalty payments made by Renfroe Japan to Renfroe & Sons.

3

(Compl. ¶¶ 24; Doc. 38 at 11 ¶¶ 4, 5.)

According to plaintiffs' allegations, Sori is president of and owner of seventy percent (70%) of the stock in Japan Clamp, and president of and owner (or controller through family holdings) of ninety-eight percent (98%) of all outstanding shares of the remaining defendant, Sori Industries, Inc. ("Sori Industries"), another Japanese corporation with its principal place of business in Tokyo. (Compl. ¶¶ 5, 13.) For the relevant time, Sori Industries manufactured all Renfroe-brand products made available for sale in Japan. (Id. ¶ 14; Doc. 38 at 11 ¶ 4.)

According to Anne Renfroe, in January 2002, Itoh requested the license agreement between Renfroe & Sons and Renfroe Japan, which was due to expire soon, be extended so the parties would have time to discuss the terms and conditions of a new agreement going forward. The parties reviewed and negotiated over draft proposed license agreements - written in English - throughout 2002 and 2003. (Doc. 38 at 11-14 ¶¶ 7, 9, 11-14.)

In late 2003 or early 2004,[1] Renfroe & Sons and Renfroe Japan executed a

---

[1] The parties disagree on when the new License Agreement was executed. Anne Renfroe states that the contract was "executed by the parties" in the Fall of 2003. (Doc. 38 at 14 ¶ 15.) Sori states that he signed the agreement on or about February 6, 2004, and that Renfroe signed it sometime between February 6, 2004 and March 3, 2004. (Doc. 40-2 at 13 ¶¶ 5, 6, 7; 40-2 at 23, 35.) The date of execution is not material to the Court's determination whether to dismiss the complaint on the basis of *forum non conveniens*. Cf. Robbins v. Gould, 278 F.2d 116, 120 (5th Cir. 1960)(an evidentiary difference as to an immaterial fact will not bar a summary judgment). The parties agree, and the face of the Agreement states, that

new License Agreement, with an effective date of November 1, 2002, pursuant to which Renfroe Japan had a license "to manufacture, sell, distribute and otherwise commercialize Renfroe-brand Products during the period October 31, 2002 through October 31, 2005." (Compl. ¶ 15; Doc. 38 at 14 ¶ 15; Doc. 39 at 3 and ¶ 1.1.) As licensee, Japan Clamp was entitled, upon advance written approval by licensor Renfroe & Sons, to sublicense the use of the licensed marks to persons or entities which would market and sell the products in Japan. The License Agreement provided that upon the October 31, 2005 termination of the agreement, the licensee and sub-licensees were required to immediately cease use of the licensed marks and to surrender or destroy items bearing the licensed marks. (Docs. 38 at 14 ¶ 16; 39 at 4 ¶¶ 1.1, 1.5, and at 8 ¶ 5.2.)

Plaintiffs cite to forum selection provisions in the agreement regarding governing law in support of their argument that the lawsuit should remain in this Court. Specifically, the License Agreement provides:

> 6.6    Governing Law. This Agreement shall be interpreted and enforced according to the substantive laws of the United States and/or the State of Florida as may be applicable, without regard to its conflict or choice of law rules. By execution of this Agreement, LICENSEE submits itself to the jurisdiction of the courts of the United States.

_____

the Agreement was effective November 1, 2002 through October 31, 2005. No agreement is attached to the complaint, but the parties each submitted a copy of an executed 2002 License Agreement in their supplemental filings. (Docs. 39 at 3; 40-2 at 25.)

(Doc. 39 at 9 (¶ 6.6).)  The License Agreement provides that remedies available to Licensor Renfroe & Sons are "under applicable law, common law, or under this Agreement" and enforcement of any remedy under the Agreement by Renfroe & Sons will not "preclude the exercise or enforcement by LICENSOR or any other right or remedy hereunder or which the LICENSOR is entitled by law to enforce."  (Doc. 39 at 9 ¶ 5.4.)  The Agreement was executed by Anne Renfroe, as president of Licensor Renfroe & Sons, and by Itoh as chairman and Sori as president of Licensee Renfroe Japan.

In addition, the License Agreement contains a provision entitled "Guarantee", which provides as follows:

> 6.9    Guarantee.  In consideration of the benefits received as a result of the transaction contemplated herein, Hiroyuki Sori, individually, Japan Clamp Company, Ltd., a Japanese company, and Sori Industries, Inc., a Japanese company, jointly and severally, do hereby guarantee performance of all obligations of LICENSEE hereunder, including, but not limited to payments of all amounts due to LICENSOR hereunder.

(Compl.  ¶¶ 29, 30; Doc. 39 at 10 (¶ 6.9).)[2] The guarantee was signed by Sori

---

[2]    As to the guarantee, the License Agreement recites as follows:

> Hiroyuki Sori, as an owner, and Japan Clamp Company, Ltd and Sori Industries, Inc., both subsidiaries and/or affiliates of the LICENSEE, will receive direct and indirect benefits from the grant of the license hereunder, and LICENSOR has required that such parties enter into this Agreement to guarantee the performance by the

individually, Japan Clamp, and Sori Industries (signed by Sori as president of both corporations) who, "by execution hereof, agree to submit themselves to the jurisdiction of the courts of the United States of America." (Doc. 39 at 10-11.) Defendants cite to provisions of the License Agreement which underscore that the agreement was to be totally performed in Japan. Specifically, the clamps in question are exclusively manufactured, marketed and sold in Japan, (see Doc. 39 at 3-4 ¶¶ 1.1, 1.4), royalty payments were paid to Renfroe & Sons "by wire transfer to LICENSOR's account with a bank in Japan as designated by LICENSOR," (Id at 5 ¶ 2.3), and taxes paid in Japan were deducted from the fee owed to Renfroe & Sons. (Id. at 6 ¶ 2.4.)

Contending that Renfroe Japan and the Sori continued to use Renfroe-brand licensed marks after October 31, 2005, J.C. Renfroe filed two actions in Japanese courts, one in Tokyo and one in Osaka, seeking injunctive relief against Renfroe Japan and the Sori Defendants. On December 15, 2005 the court in Tokyo entered an order enjoining Renfroe Japan and the Sori Defendants from using the licensed marks and requiring their surrender. The Tokyo case was voluntarily dismissed on January 18, 2006. Subsequently, the court in Osaka issued a similar injunction, and

---

LICENSEE and the payment due hereunder and such parties have agreed to guarantee same.

(Doc. 39 at 3.)

7

that case was voluntarily dismissed on February 21, 2006.  (Doc. 38 at 14 ¶ 17.)

This lawsuit was then filed in this Court on May 16, 2006.  (Doc. 1.)  Plaintiffs allege here that defendants Sori and Itoh "converted" assets of Renfroe Japan for their own benefit and mismanaged and manipulated Renfroe Japan to benefit defendants Japan Clamp and Sori Industries, depriving Renfroe & Sons "of the economic benefits it expected and is entitled to under the License Agreement . . . ." (Compl. ¶¶ 31, 32, 33, 35.)  In this regard, the plaintiffs allege:

> 36.    Throughout the entire term of the . . . License Agreement, which expired by its terms on October 31, 2005, Renfroe Japan has been unable to pay royalties in full or on a timely basis to Renfroe & Sons.  Such breaches of the . . . License Agreement are due to mismanagement and self-dealing by Yuji Itoh and Hiroyuki Sori.

(Id. ¶ 36.)

As a result, Renfroe & Sons declined to renew its License Agreement in October 2005 and requested Renfroe Japan to cease using the Renfroe-brand mark.  (Compl. ¶ 38.)  In spite of this demand, plaintiff alleges that defendants Renfroe Japan and Japan Clamp continued to sell Renfroe-brand products through the remainder of 2005 and into 2006, and Japan Clamp and Sori Industries retained their Renfroe-brand products inventory that could be resold.  (Id. ¶¶ 40, 41, 42.)

Plaintiffs allege that the Court has diversity jurisdiction and that the defendants "have had continuous and substantial contacts" with Florida.  (Compl. ¶¶ 43, 44.)  Furthermore, plaintiffs allege that "[d]efendants expressly consented in the license

8

agreements to the jurisdiction of this Court." (Id. ¶ 45.)

Based upon these factual allegations, plaintiffs bring a 16-count complaint. Counts I through V are labeled breach of contract, all making claims based upon the License Agreement against "Defendants", and alleging breaches by sublicensing to an unauthorized party; making insufficient payment of fees; failing to maintain complete books and records; selling unlicensed products and unmarked clamps. (Compl. ¶¶ 48-69.)  Count VI alleges breach of the guaranty by Japan Clamp, Sori Industries, and Sori.  (Id. ¶¶ 70-74.)

Counts VII through XV are tort claims, including conversion, fraud, interference with contractual and business relationships, civil conspiracy, breach of fiduciary duty and duty of candor, and unfair competition.  (Compl. ¶¶ 75-116.)  Count XVI is a claim for trademark infringement.  (Id. ¶¶ 117-21.)[3]  Plaintiffs ask for money damages in each count.

## II.    DISCUSSION

### A.    Introduction

Defendants seek dismissal of the complaint on several grounds: *forum non*

---

[3]    Plaintiffs seek to hold defendants Itoh and Sori liable for torts (conversion, fraud, interference with contractual and business relationships, conspiracy, breach of fiduciary duty and duty of candor) alleged in Counts VII, IX, X, XI, XII, XIII and XIV; Japan Clamp, Sori Industries and Sori liable for conversion in Count XIII; and all defendants liable for unfair competition and trademark infringement in Counts XV and XVI.  (Doc. 1 at 28-29.)

*conveniens*, lack of personal jurisdiction, and failure to state a claim.[4]  The Supreme Court recently advised that "[a] district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter jurisdiction and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S.Ct. 1184, 1192 (2007).  A *forum non conveniens* dismissal "is a determination that the merits should be adjudicated elsewhere." Id. at 1192.   Accordingly "where *forum non conveniens* considerations weigh heavily in favor of dismissal," the Court takes the less burdensome course and addresses the *forum non conveniens* issue first. See Sinochem Int'l Co., 127 S.Ct. at 1194.[5]

**B.    *Forum Non Conveniens***

Under the doctrine of *forum non conveniens*, a district court has the inherent power to decline to exercise jurisdiction even where venue is proper.  See Sinochem Int'l Co., 127 S.Ct. at 1190; Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947). "A

---

[4]    Plaintiff Renfroe & Sons does not object to dismissal without prejudice of Count X alleging interference with contractual relationship, or to dismissal of claims brought by Anne Renfroe individually.  (Doc. 30 at 23, 28.)

[5]    The federal doctrine of *forum non conveniens* as opposed to convenience transfer under 28 U.S.C. § 1404(a)) applies where, as here, the alleged alternative forum is abroad.  See Sinochem Int'l Co., 127 S.Ct. at 1190-91; American Dredging Co. v. Miller, 510 U.S. 443, 449 n. 2 (1994).  In federal diversity cases, *forum non conveniens* is governed by federal law. Sibaja v. Dow Chemical Co., 757 F.2d 1215, 1219 (11th Cir. 1985); Proyectos Orchimex de Costa Rica, S.A. v. E.I. duPont de Nemours & Co., 896 F. Supp. 1197, 1200 (M.D. Fla. 1995).

federal court has discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Sinochem Int'l Co., 127 S.Ct. at 1190 (citation omitted); American Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994).  The doctrine of *forum non conveniens* permits a court to decline to exercise jurisdiction when it appears that the convenience of the parties and the interests of justice weigh in favor of trying the action in an alternative forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981).

The movant must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  Leon v. Million Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001).  "A defendant has the burden of persuasion as to all elements of a *forum non conveniens* motion . . . ." Leon, 251 F.3d at 1311.  Because "the touchstone of *forum non conveniens* analysis is convenience, controlling weight cannot be given to any one factor in the balancing process or the doctrine would lose much of the flexibility that is its essence." La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983)(citing Piper Aircraft Co., 454 U.S. at, 256).  While considering all relevant

11

factors, the Court must weigh in the balance a "strong presumption" against disturbing the plaintiffs' initial choice of forum which "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Piper Aircraft Co., 454 U.S. at 255. See also SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004)(citing Piper Aircraft Co.); Leon, 251 F.3d at 1311; La Seguridad, 707 F.2d at 1307.

In making a *forum non conveniens* determination, the Court may look to the parties' submissions of proof in support or opposition to the motion. See Piper Aircraft Co., 454 U.S. at 258-59 (although detailed offers of proof are unnecessary, a defendant must submit sufficient information to allow the court to balance the parties' interests); Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988)(district court's inquiry into *forum non conveniens* does not require extensive investigation, and may be resolved on affidavits presented by the parties).[6]   "The *forum non conveniens*

---

[6]   Courts routinely consider affidavits submitted by the parties in connection with motions to dismiss for *forum non conveniens*. See e.g. Ford v. Brown, 319 F.3d 1302, 1310-11 (11th Cir. 2003) (expert testimony regarding whether a foreign court would have jurisdiction may be received but is not required); Warter v. Boston Securities, S.A., 380 F. Supp.2d 1299, 1304, 1307 (S.D. Fla. 2004)(citing declaration recounting pending legal proceedings in Argentine court and opining that Argentine courts would provide an adequate alternative forum); Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1282-83 (11th Cir. 2001)((defendant's expert affidavit by Argentine professor that Argentina would be an adequate alternative forum provides adequate support in the record for that determination); Da Rocha v. Bell Helicopter Textron, Inc., 451 F. Supp.2d 1318, 1322, 1326 (S.D. Fla. 2006)(affidavit explaining Brazilian Civil Code); Proyectos Orchimex de Costa Rica, S.A., 896 F. Supp. at 1201 (affidavits submitted on defendant's motion to dismiss for *forum non conveniens* by

determination is committed to the sound discretion of the trial court . . . ."   Piper Aircraft Co., 454 U.S. at 257.

### 1.   Japan is an Available Adequate Forum

The first step in a *forum non conveniens* analysis is determining whether an available alternative forum exists.   "Availability and adequacy warrant separate consideration."   Leon, 251 F.3d at 1311.   "'[T]he burden of establishing whether an alternative forum exists is not a heavy one.'"   Warter v. Boston Securities, S.A., 380 F. Supp.2d 1299, 1306-07 (S.D. Fla. 2004)(citation omitted).   "The alternative forum prong of the analysis generally 'will be satisfied when the defendant is amenable to process in the other jurisdiction.'"   Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1282 (11th Cir. 2001)(citing Piper Aircraft Co., 454 U.S. at 255 n. 22).   A "defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of *forum non conveniens* analysis."   Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1245 (5th Cir. 1983). When a defendant agrees to waive jurisdiction in the alternative forum, a court may dismiss the case on *forum nonconveniens* grounds, retain jurisdiction, and reinstate the case if the foreign forum refuses to accept jurisdiction.   Leon, 251 F.3d at 1316

### a.   Forum Selection Clause

Plaintiffs concede that "[o]rdinarily, Japanese courts provide an adequate

_____

Costa Rican lawyers concerning Costa Rican law).

alternative forum" but suggest, without any evidentiary support, that "[i]t is not clear" whether Japanese courts would hear this case for damages "given the terms of the November 2002 [License] Agreement" because "Japanese courts are hesitant to hear cases where contracts expressly provide for disputes to be resolved in a different forum." (Doc. 30 at 8-9.)   Plaintiffs contend that Japanese courts may not accept jurisdiction because the "November 2002 Agreement contains an agreed-upon forum selection clause," and that their choice of this forum "can hardly be characterized as 'vexatious' or 'oppressive' to Defendants who agreed to litigate in Florida." (Doc. 30 at 7.)

Plaintiffs' argument fails for several reasons.  First, the cited forum selection clauses were no impediment to plaintiffs bringing two actions in Japan's courts against these same defendants arising out of the License Agreement and guaranty and complaining about essentially the same conduct. (Doc. 40-4 at 2-4.)  Indeed, counsel for Renfroe and Sons informed these same defendants on October 14, 2005 that it had "been instructed to prepare a lawsuit for filing in Japanese courts" to be "accompanied by demands for punitive damages and treble damages in accordance with the Florida law, as well as the award of attorneys' fees and costs." (Id. at 3-4.) Second, the forum selection clauses apply only to plaintiffs' breach of contract claims, Counts I through VI.  The contractual choice of law provision does not apply to the remaining counts of the complaint alleging tort claims (Counts VII through XV) and

trademark infringement (Count XVI).   Finally, the forum selection clauses are permissive rather than mandatory.

Plaintiffs argue that they intended that legal disputes be resolved in the courts of the United States and thus, inserted a forum selection clause into the draft of the agreement during negoatiations.

> 11.   . . . J.C. Renfroe retained the Jacksonville law firm of Brant, Abraham, Reiter, McCormick & Green, P.A. to assist with negotiations and revisions to the proposed agreement. To address my concern about arbitrating any dispute in Japan, they recommended inclusion of a clause in the proposed new agreement in which the Defendants agreed to submit themselves to the jurisdiction of the courts of the United States for resolution of any disputes (the "forum selection clause").

Doc. 38 at 13 ¶ 11 (affidavit of Anne L. Renfroe).)  A copy of that August 1, 2003 draft reveals that the Jacksonville law firm added the following phrase to the proposed Agreement: "By execution of this Agreement, LICENSEE submits itself to the jurisdiction of the courts of the United States." (Doc. 38-3 at 15 ¶ 6.6.)  Defendant Itoh responded on October 28, 2003, as follows: "Please delete the paragraphs 6.7 to 6.9 [entitled"Survival", "Attorneys' Fees", and "Guarantee"].  Particularly, we cannot image [sic] how your warlike attorney brings this agreement to the court of Law.  Please remember our relationship and business history.  We could resolve the all [sic] problems and misinterpretations without bringing any case to the court." (Doc. 38-3 at 34.)  Anne Renfroe states in her affidavit that she "insisted on the forum selection

clause specifying the United States as the venue for resolving any disputes related

to the agreement," replying on November 20, 2003 to Itoh that the proposed provision

provided the "basic and customary protections" to Renfroe & Sons. (Doc. 38 at 14 ¶

14; 38-3 at 38.)   The final Agreement contained the forum selection clause, as

proposed by plaintiffs' attorneys.

Forum selection clauses are classified as either permissive or mandatory.

Global Satellite Communication Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th

Cir. 2004).  A permissive clause authorizes jurisdiction in a designated forum but does

not prohibit litigation elsewhere.   In contrast, a mandatory clause must be clear,

unequivocal and contain language of exclusivity.  Global Satellite Communication Co.,

378 F.3d at 1272.  "In order to be enforceable, a forum selection clause must be more

than a mere consent to jurisdiction."  Homen v. M/V SCM Tepuy II, No. 05-61626-CIV-

DIMITROULEAS, 2006 WL 4460876, * 2 (S.D. Fla. 2006).  Thus, only forum selection

clauses that unambiguously designate the forum in which the parties must enforce

their rights under the contract will be enforced.  See Citro Florida, Inc. v. Citrovale,

S.A., 760 F.2d 1231, 1232 (11th Cir. 1985) (forum selection clause which stated "place

of jurisdiction is Sao Paulo/Brazil" is ambiguous concerning the exclusive nature of

the provision and is not mandatory); Stateline Power Corp. v. Kremer, 148 Fed. Appx.

770, 771-72 (11th Cir. 2005)(unpublished opinion)(contract clause in which parties

"consent to the jurisdiction of the courts of the State of Florida" is permissive).

Here, the parties to the contract, plaintiff Renfroe & Sons, and defendant Renfroe Japan, "submit" to the jurisdiction of the courts of the United States.  The "forum selection clause," drafted by attorneys for plaintiffs (see Doc. 38-3 at 15), is merely a consent to jurisdiction rather than an agreement to litigate in an exclusive forum; it contains no mandatory jurisdictional language to indicate that the parties meant to foreclose litigation in Japan.  Indeed, plaintiffs concede that the venue provision in the guaranty is "a permissive, and not a mandatory provision." (Doc. 42 at 3.)  Thus, regardless of what Anne Renfroe now says she intended, plaintiff J.C. Renfroe & Sons, Inc., the proper plaintiff in this action, (see Doc. 30 at 28 (plaintiffs agree to dismissal of claims brought by Anne Renfroe individually)), is bound by the terms of the forum selection provision negotiated by its attorneys.

## b.    __Adequacy of Japan as an Alternative Forum__

With Japan available as a possible alternative forum, defendants carry the burden of proving its adequacy.  An alternative forum is "presumed 'adequate' unless the plaintiff makes some showing to the contrary." Leon, 251 F.3d at 1312 (foreign forum will be found adequate unless "the plaintiff has substantiated his allegations of serious corruption or delay").  "An adequate forum need not be a perfect forum." Satz, 244 F.3d at 1283.  An alternative forum is inadequate when the remedy it affords is "'clearly unsatisfactory'" or "amount[s] to 'no remedy at all.'" Satz, 244 F.3d at 1283 (citing Piper Aircraft Co., 454 U.S. at 255 n. 22, 265).  The prospect of a

lesser recovery does not justify refusing to dismiss on the ground of *forum non conveniens.* Piper Aircraft Co., 454 U.S. at 247-48; Warter, 380 F. Supp.2d at 1309 (differences in the law do not render a forum inadequate; Argentine courts provide adequate alternative jurisdiction even though they do not provide for awards of punitive damages).

Defendants Japan Clamp, Sori Industries, and Sori present the declaration of Shuichi Kashiwagi in support of dismissal for *forum non conveniens.* Mr. Kashiwagi is a Japanese lawyer who states that he had reviewed the pleadings in two previous lawsuits filed by Renfroe & Sons in Tokyo and Osaka Japan, naming as defendants Japan Clamp, and Sori Industries and applying for temporary restraining orders in connection with the same products at issue here. (Doc. 17-2 at 3 ¶¶ 12, 13.) Mr. Kashiwagi states that there was no challenge to the personal jurisdiction of the Japanese courts by any of the parties in either proceeding, and opined that Japanese courts would have subject matter jurisdiction over the plaintiffs' claims brought in this litigation if the Court were to dismiss those claims on the basis of *forum non conveniens.* (Id. at 3 ¶¶ 15, 16.) "There is no legal or procedural bar to the plaintiffs in the Jacksonville litigation from prosecuting their claims in a Japanese court," Mr. Kashiwagi opines. (Doc. 17-2 at 4 ¶ 17.)[7] Defendants filed copies of the Japanese

---

[7]     Mr. Kashiwagi states that in his opinion, "the courts in Japan would not enforce a judgment [entered by this Court] . . . over [corporate] matters in which the Japanese District Courts have original and exclusive jurisdiction." (Doc. 17-2 ¶ 18.)  Plaintiffs

pleadings in the two previous cases, in Japanese and translated into English, as

exhibits to the Affidavit.  (Doc. 18.)[8]

Plaintiffs have made no argument or showing that Japanese courts are unable

to expeditiously and completely consider their claims, nor that the remedies available

under Japanese law are inadequate.[9]   Indeed, plaintiffs already have availed

_____

respond with the Declaration of Japanese attorney Yoshimasa Furuta, who states that
"none of the causes of action in Counts I through XVI in Plaintiffs' Complaint implicate
the types of corporate matters subject to the original and exclusive jurisdiction of a
Japanese court."  (Doc. 42 at 12 ¶ 12.)  In view of competing declarations and lack
of full legal briefing on this question, the Court does not consider whether Japanese
courts have exclusive jurisdiction over corporate matters raised by Plaintiff's claims
as a factor in this *forum nonconveniens* determination.  The Court does, however,
note that plaintiffs complain of conduct which allegedly occurred totally within Japan,
and involved Japanese corporations and citizens.

[8]   While Plaintiffs do not contest that Renfroe & Sons previously brought two
actions in Japan and do not dispute the documents' authenticity, they do oppose the
Court's consideration of the prior lawsuits in Japan on motion to dismiss, and request
that the exhibit be stricken.  (Doc. 30 at 5, 14.)  In their supplemental submission,
however, plaintiffs specifically referenced the two proceedings in Japan.  (Doc. 38 at
14 ¶ 17.)  Plaintiffs' contentions that "those cases were preliminary injunction
proceedings, not regular lawsuits" (Doc. 42 at 11, ¶¶ 8-11) is unavailing.  The Court
declines to strike the exhibit and considers the declaration of Shuichi Kashiwagi (Doc.
17-2) and the prior proceedings in Japan (Doc. 18) in connection with its analysis of
the issues raised by defendants' motions to dismiss for *forum non conveniens.*

[9]   The case Ceramic Corp. of America v. Inka Maritime Corp., 1 F.3d 947 (9th Cir.
1993) cited by plaintiffs as support for the assertion that it is not clear that Japanese
courts would accept this dispute (Doc. 30 at 8-9) is distinguishable.  In Ceramic Corp.
of America, the court determined that because Japanese courts would enforce a
mandatory forum selection clause "*requiring* that any suit *must* be brought in
Germany" and dismiss the suit if brought in Japan, Japan in that instance could not
be considered an adequate alterative forum.  1 F.3d at 949 (emphasis added).  Here,

themselves of the Japanese courts to readily resolve their claims for injunctive relief (Doc. 18), then decided to dismiss those cases and bring their claim for money damages here.   In light of the fact that the Court can condition dismissal upon plaintiffs' ability to reinstate this suit in Japan, with the proviso that this Court will reassert jurisdiction if the foreign court refuses to entertain the suit, see infra, further inquiry into Japanese jurisdictional law is unnecessary and the Court finds that Japan is an "available" and adequate forum.   Ford v. Brown, 319 F.3d 1302, 1310-11 (11th Cir. 2003); Lisa, S.A. v. Gutierrez Mayorga, 441 F.Supp.2d 1233, 1237 (S.D. Fla. 2006), aff'd, Case No. 06-15019, 2007 WL 1667229 (11th Cir. June 11, 2007); see also Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764, 768-69 & n.3 (9th Cir. 1991)(finding Japan to be an adequate alternative forum, and citing cases).

### 2.   **Private Interests of the Litigants**

The next step in the *forum non conveniens* inquiry is weighing the balance of factors relating to the relative convenience of the litigants.   The factors include the "'ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Leon, 251 F.3d at 1314 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

In a *forum non conveniens* inquiry, courts show deference to and consider the

---

plaintiffs cited to a permissive forum selection clause in the License Agreement.

"strong presumption" in favor of a plaintiff's choice of forum.  SME Racks, Inc., 382 F.3d at 1101; Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 865-66 (11th Cir. 2007)(unpublished opinion). This presumption for plaintiff's choice is strongest when the plaintiff is a United States citizen, resident, or corporation.  SME Racks, Inc., 382 F.3d at 1101.  To overcome the strong presumption in favor of plaintiff's initial forum choice the Court requires "'positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest . . . .'" Id. (citation omitted).   "[F]ailure to account for this presumption when balancing the private interests is an abuse of discretion."  Tyco Fire & Sec., LLC, 218 Fed. Appx. at 866 (citing SME Racks, Inc., 382 F.3d at 1102-03).  However, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum.  As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  Piper Aircraft Co., 454 U.S. at 255 n. 23; see also Tyco Fire & Sec., LLC, 218 Fed.Appx. at 865-66.

"Perhaps the most important 'private interest' of the litigants is access to evidence."  Ford, 319 F.3d at 1308.  Analyzing the plaintiff's causes of action, the court must consider the necessary evidence required to prove and disprove every element and make a reasoned assessment as to the likely location of such proof.  Id., 319 F.3d at 1308.  See also Sinochem Int'l Co., 127 S.Ct. at 1192 ("a court may need

to identify the claims presented and the evidence relevant to adjudicating those issues to intelligently rule on a *forum non conveniens* motion").

Aside from Anne Renfroe, Ron Raymond, chief executive officer of Renfroe & Sons, and J.C. Renfroe, Jr., all residents of Jacksonville, Florida, plaintiffs have identified no other witnesses located in Florida, or for that matter in the United States. (Doc. 38 at 4-6.)  This is weighed against twenty two (22) witnesses identified by defendants, including defendants Itoh and Sori and "officers, directors, employees, accountants and attorneys of Renfroe Japan, Japan Clamp and Sori Industries" (Doc. 40 at 2), all of whom are citizens and residents of Japan.  Further, "few if any of these witnesses [including defendant Sori] are fluent in English, and thus most of the identified witnesses must have documents and conversations translated from English to Japanese."  (Doc. 40-2 at 14 ¶ 8 and 16-18 ¶ 11.)  See generally Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1429-30 (11th Cir. 1996)(considering the number of French witnesses); Proyectos Orchimex de Costa Rica, S.A. v. E.I. duPont de Nemours & Co., 896 F. Supp. 1197, 1202 (M.D. Fla. 1995)("vast majority" of material witnesses are located outside of the forum)

Plaintiffs argue that "[a]s all the Japanese witnesses are under the control of the named Defendants, any such witnesses must be produced for deposition pursuant to Fed.R.Civ.P. 26 and 30."  (Doc. 38 at 4.)  Japanese lawyer Shuichi Kashiwagi, in a supplemental affidavit submitted by defendants, states that Japanese law does not

have any provision empowering an employer to compel an unwilling non-United States citizen to appear in a court proceeding in the United States.  (Doc. 40-3 at 3 ¶ 4.)  Citing Article 17(1)(e)(ii) of the U.S. - Japan Consular Convention, Kashiwagi states that "depositions of Japanese citizens residing in Japan for use in U.S. litigation are only permitted if 'voluntarily given . . . '", and that "[c]ompulsion of evidence in Japan from an unwilling witness can only be achieved on the basis of comity, pursuant to a request for assistance in the form of a letter rogatory from a court in the United States to a District Court in Japan."  (Doc. 40-3 at 3 ¶ 6, and at 5 ¶ 12.) Kashiwagi cites to procedures required by Japan for the taking of depositions and the interviewing of witnesses, as published by the United States Department of State.  Id. at 4 n.1 (citing http://travel.state.gov/law/info/judicial/judicial_678.html).

In response, plaintiffs proffer the declaration of Yoshimasa Furuta, a Japanese attorney who specializes in international litigation, who states that while "Japanese law does not provide for compelling Japanese citizens to the U.S. to appear for civil litigation in the U.S . . . .", "[u]nder the ordinary employment contract, a Japanese employer may require its employees to appear and testify before a U.S. court, provided the subject matter of their intended testimony is within the scope of their employment." (Doc. 42 at 12-13 ¶¶14, 15.)  Attorney Furuta suggests that the parties could agree to bring the Japanese deponents to Hawaii for the taking of their depositions.  (Id. at ¶ 17.)   He agrees that in the case of an unwilling witness, a

United States court may issue letters rogatory to a Japanese court "to compel an unwilling witness to visit a competent Japanese court to testify for the U.S. Litigation." (Id. at ¶ 14.)

The record contains no evidence that defendant corporations or individuals have any contractual control over the remaining Japanese individuals identified as witnesses which would require the individuals to submit to depositions or compel them to attend proceedings in United States litigation.  Thus, based on this record, the Court must assume that the Japanese witnesses are "unwilling," and that their testimony may only be secured in aid of United States' proceedings by use of the foreign letter rogatory process, which is cumbersome at best.

Further, these Japanese witnesses are beyond the compulsory process of United States courts.  "[T]o fix the place of a trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 511 (1947); see also Magnin, 91 F.3d at 1430 (unavailability of compulsory process to secure attendance of French witnesses in a court in this country a factor supporting dismissal for *forum non conveniens*); Warter, 380 F. Supp.2d at 1312.

Japan is not a party to the Hague Convention on the Taking of Evidence in Civil or Commercial Matters.  Japanese law authorizes a deposition in Japan for use in the

24

United States only if (1) the witness or party is willing to be deposed, (2) the deposition takes place on United States consular premises, which are of limited availability and size and available upon reservation for a fee, (3) a consular officer presides over that deposition for an hourly fee, pursuant either to a letter rogatory issued by a United States court or a court order that specifically authorizes a U.S. consular officer to take the deposition on notice, (4) and each participant traveling from the United States to Japan to participate in the deposition obtains a special "deposition visa."  Furthermore, scheduling such a deposition is "not an insignificant hurdle."  Murata Manufacturing Co., Ltd. v. Bel Fuse, Inc., 242 F.R.D. 470, 472 n.2 (N.D. Ill. 2007)(citing Consular Convention and Protocol, Mar. 22, 1963, U.S.-Japan, art. 17(1)(e)(ii), 15 U.S.T. 768; Fed. R. Civ. P. 28(b); 22 C.F.R. § 92-49-92.71; In re Application for Order Quashing Deposition Subpoenas, No. M8-85, 2002 WL 1870084 (S.D.N.Y. Aug. 14, 2002)(unpublished opinion); In re Vitamin Antitrust Litigation, No. 99-197 TFH, MDL No. 1285, 2001 WL 35814436, at *6 (D.D.C. 2001)(unpublished opinion).  See also Detailed Information On Deposition Taking In Tokyo, Embassy of the United States, Japan, U.S. Citizen Services, available at http://tokyo,usembassy.gov/e/acs/tacs-deposition_detail.html (noting reservation fee is now $475.00; hourly consular fees are $265.00 an hour plus a $70.00 fee for consular certification);  Obtaining Evidence in Japan, Practising Law Institute, Litigation and Administrative Practice Course Handbook Series, 2006, available at

Westlaw 740 PLI/Lit 27, 32 (stating that the American Embassy in Tokyo is generally booked six months in advance; and that court reporters, stenographers, videographers and interpreters must be privately arranged).

These same procedures apply to the unwilling witness, who may be compelled to testify only on the basis of comity, pursuant to a letter rogatory. "Such requests are executed by Japanese district courts in accordance with the laws of Japan and generally take six months to a year to execute." <u>Obtaining Evidence In Japan</u>, 740 PLI/Lit at 41.

Plaintiffs acknowledge that "it may take longer and be more expensive to obtain testimony from non-party witnesses through letters rogatory . . . ," but contend that this burden would fall on plaintiffs to prove their case, failing to recognize that defendants will also require these Japanese witnesses' testimony to defend against plaintiffs' claims. (Doc. 30 at 11.) While the Court agrees that the burdens of letters rogatory and the Japanese consular procedure for the taking of depositions for United States litigation alone are not a basis to dismiss for *forum non conveniens*, this inconvenience weighs in the balance in favor of dismissal.

Furthermore, with respect to documents, plaintiffs contend that "proof can be found in the correspondence and communications between the parties relating to the agreement" and that the correspondence is in English and is located in Renfroe & Sons' files in Jacksonville, (Doc. 30 at 10), and that "the License Agreement, sales

and earning histories, audits and financial statements of Renfroe Japan, and J.C. Renfroe's product inventory" are "in English and are located in J.C. Renfroe's headquarters in Jacksonville." (Doc. 38 at 4.) Plaintiffs do concede that documents relevant to Counts 10 through 16 are located in Japan, but contend that the documents are "readily obtainable for trial here." (Doc. 38 at 5-6.)

Defendant Sori identifies twenty-one (21) documents and categories of documents currently located in Japan, and further states that "almost all of these documents are in Japanese, and many are under the custody and control of third parties over whom I or the other Defendants do not exercise control." (Doc. 40-2 at 14 ¶ 10.) Further, according to attorney Kashiwagi, "Japanese law has no provisions for compulsion of documents or other physical evidence for use in civil court proceedings in the United States." (Doc. 40-3 at 3 ¶ 5.) See also Obtaining Evidence In Japan, 740 PLI/Lit at 42 (consular officials have no authority to compel the production of any document or other article in Japan, and Japanese law does not include any provision for compulsion of documents in civil cases; "attempts to compel such evidence by means of letters rogatory in civil cases have proven unsuccessful").

It appears that most, if not all of the defendants' corporate documents relevant to this matter, the primary sources of corporate and financial information, which are most likely more voluminous and complex than the correspondence cited by plaintiffs, are maintained in Japan and are written in Japanese. Moreover, plaintiffs concede

that sources of proof relating to the millions of dollars of damages claimed, as well as all documents relating to their tort claims or generated after October 2005, are located in Japan and written in Japanese.  (Docs. 30 at 10-12; 38 at 5-6.)

Finally, if these claims were filed in Japan, plaintiffs could compel testimony and documents from unwilling U.S. witnesses pursuant to 28 U.S.C. § 1782, which provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . .."  See Proyectos Orchimex de Costa Rica, S.A., 896 F. Supp. at 1202-03 (ability to obtain evidence in United States pursuant to 28 U.S.C. § 1782 supports dismissal).

This case will be costly and time consuming wherever it is litigated. Nevertheless, the Court has carefully weighed the parties' representations concerning the ease of access to proof in the competing jurisdictions and the ultimate convenience to the parties, and finds that the balance of private interest factors, even considering the strong presumption in favor of Plaintiffs' choice of forum, weighs in favor of dismissal.  It is apparent that if these claims are brought in Japan, the parties will have greater access to all important witnesses and documents necessary to present their cases.  On the other hand, if the case remains here, both plaintiffs and defendants could be deprived of potentially key third party witnesses and documents, and, at best, would be required to present a significant portion of their cases by

deposition.  See Da Rocha v. Bell Helicopter Textron, Inc., 451 F. Supp.2d 1318,

1324 (S.D. Fla. 2006)(dismissal for *forum non conveniens* supported by "the quantity

and quality of the evidence located in Brazil").

Defendants' *forum non conveniens* motion, when coupled with the allegations

of Plaintiffs' complaint which set forth the gravamen of this action, adequately present

"positive evidence of unusually extreme circumstances" such that the Court is

"thoroughly convinced that material injustice is manifest" in the continuation of this

lawsuit here.  While the presumption in favor of plaintiffs' initial forum is strongest

when the plaintiff is a United States citizen, resident or corporation, the Eleventh

Circuit recognizes that "'dismissal should not be automatically barred when a plaintiff

has filed suit in his home forum.  As always, if the balance of conveniences suggests

that the trial in the chosen forum would be unnecessarily burdensome for the

defendant or the court, dismissal is proper.'" SME Racks, Inc., 382 F.3d at 1101 n.6

(quoting Piper Aircraft Co., 454 U.S. at 255 n. 23)).

Unlike SME Racks, Inc., where a United States citizen and company sued a

Spanish company which had promoted its product at an industry exhibition in the

United States, over delivery of defective goods to the United States pursuant to a

contract negotiated in the United States and Spain, and signed in Spain, (and

characterized by the court as involving "an allegedly predatory foreign business that

actively solicitied business and caused harm within the home forum [United States]"),

382 F.3d at 1099, 1104, the plaintiffs here are suing over alleged conduct by Japanese individuals and corporations which occurred entirely in Japan, and which allegedly damaged a United States corporation which has been doing business in Japan for forty years.[10]   Further, plaintiffs have previously availed themselves of Japanese courts regarding this very same dispute.

"Although courts usually afford deference to a Plaintiff's choice of forum, when

---

[10]   Other cases in which claims brought by United States plaintiffs were not dismissed based upon *forum nonconveniens* are likewise distinguishable.  See E-One, Inc. v. R. Cushman & Assocs., Inc., No. 5:05-cv-209-Oc-10GRJ, 2006 WL 2599130, at *11 (M.D.Fla. May 15, 2006)(Report and Recommendation of Magistrate Judge)(unpublished opinion)(declining dismissal for *forum non conveniens* of suit brought by United States corporation concerning a contract to manufacture rescue vehicles and supply of allegedly defective component parts in part because "this is not a situation where the alleged wrongs occurred primarily in the foreign country, nor is this a situation where the Plaintiffs' claims have no real connection with the chosen forum"), adopted No. 5:05-cv-209-Oc-10GRJ, 2006 WL 2598458 (M.D. Fla. Sept. 11, 2006)(unpublished opinion); TNT USA, Inc. v. Trafiexpress, S.A. De C.V., 434 F. Supp.2d 1322 (S.D. Fla. 2006)(denying *forum non conveniens* dismissal of case brought by United States and Dutch corporations against Mexican companies for breach of contract and trademark infringement, where among other considerations two out of the four defendants have a presence in south Florida and the corporate defendants do business in American markets); King ex rel. Estate of King v. Cessna Aircraft Co., 405 F. Supp.2d 1374, 1379 (S.D. Fla. 2005)(personal injury action against United States corporation arising out of chartered airplane crash in Italy dismissed as to foreign plaintiffs but not as to plaintiffs who were United States citizens, where much, if not all, of the evidence had already been gathered and evidence of damages was located in the United States); Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F. Supp.2d 1246, 1263-64 (S.D. Fla. 2001)(denying motion to dismiss of suit by personal representatives of Florida minor who died when snorkeling in hotel lagoon in the Bahamas where all documents related to the accident were located in Miami; it was not particularly inconvenient or costly to transport defendant's witnesses from Bahamas to Miami; cause of death in Bahamas not in dispute; and defendant foreign corporations had systematic and continuous contacts with Florida).

'an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished.'" Warter, 380 F. Supp.2d at 1314 (dismissing a United States citizen's action on *forum nonconveniens* grounds, and quoting Sussman v. Bank of Israel, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992), aff'd 990 F.2d 71, 71-72 (2d Cir. 1993)); see also EFCO Corp. v. Aluma Systems USA, Inc., 268 F.3d 601, 602 (8th Cir. 2001)("[w]hether or not an American corporation which chooses an American forum for its lawsuit will have its choice of forum preference discounted because it does extensive business abroad, will often depend on the particular facts and circumstances of the case"); Chazen v. Deloitte & Touche, LLP, No. 03-11472, 2003 WL 24892029 (11th Cir. Dec. 12, 2003)(unpublished opinion)(affirming dismissal on *forum non conveniens* grounds of suit brought by Alabama citizen on basis that every factor but plaintiff's choice of forum militated in favor of dismissal); see also Satz, 244 F.3d 1279 (affirming *forum non conveniens* dismissal in suit where United States plaintiff who resided in Argentina was personal representative of deceased who perished in a plane crash in South America)

### 3.    **Public Interests Factors**

Public interest factors are considerations that affect the convenience of the competing forums.  See Piper Aircraft Co., 454 U.S. at 241.  The public interest

31

factors to be considered include:

> the administrative difficulties flowing from court congestion;
> the local interest in having localized controversies decided
> at home; the interest in having the trial of a diversity case in
> a forum that is at home with the law that must govern the
> action; the avoidance of unnecessary problems in conflict
> of laws, or in the application of foreign law; and the
> unfairness of burdening citizens in an unrelated forum with
> jury duty.

Piper Aircraft, 454 U.S. at 241 n.6 (citation omitted).   The primary factors for consideration are "'the sovereigns' interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law'." Satz, 244 F.3d at 1284 (citation omitted).  "The public factors recognize[ ] that hearing cases of no interest to the United States would exacerbate docket congestion, would impose costs on the community in terms of judicial resources and jury duty, would foster the need to 'untangle problems in conflict of laws' and to decide cases 'in law foreign' to the court and would conflict with the general interest in 'having localized controversies decided at home.'" Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519 (11th Cr. 1985)(quoting Gulf Oil Corp., 454 U.S. at 251); see also SME Racks, Inc., 382 F.3d at 1101. Further, "'federal courts necessarily must analyze the interest that the foreign country has in the dispute, an analysis that may raise issues of international comity.'" Ford, 319 F.3d at 1307 (citation omitted).

Plaintiffs argue that this Court has a definite relation to this action because it involves alleged fraud perpetrated against a citizen located in this forum.  Plaintiffs

32

contend that the Court, community, and jury drawn from citizens in the Middle District of Florida all have an interest hearing the claims of a "home grown" company.  (Doc. 30 at 13.)  However, the alleged wrongs arose out of conduct in Japan; the evidence relating to it is largely in Japan.  The plaintiffs have not alleged that defendants caused harm within this forum.  Compare, SME Racks, Inc., 382 F.3d at 1104 ("sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil").

Plaintiffs' make the unpersuasive argument that "[t]ranscribers will be needed to some extent wherever the case is tried" and "[s]ince the individual defendants speak English and the representatives of Renfroe do not speak Japanese, less transcribing of witness testimony may be necessary if the case remains in this forum." (Doc. 30 at 12.)  Plaintiffs fail to acknowledge that if this case remains here, all Japanese documents and witness testimony would have to be translated into English for the benefit of the Court and the jury hearing the case, regardless of what language the various parties speak.  The time required to compel unwilling Japanese witnesses to testify in a case in this Court, plus the time inherent in translating testimony and documents from Japanese to English would create inefficiency and extra cost and tend to protract the litigation, and impose a further administrative burden on this forum.  See Da Rocha, 451 F. Supp.2d at 1325.

Further, resolution of plaintiffs' claims may require the application of Japanese

law.  The License Agreement provides that it "shall be interpreted and enforced according to the substantive laws of the United States and/or the State of Florida as may be applicable, without regard to its conflict or choice of law rules."  (Doc. 39 at 9 ¶ 6.6.)  Assuming for purposes of this analysis that the plaintiffs' contractual claims are governed by Florida law (thus favoring plaintiffs' position), this provision does not apply to the remaining tort claims or to the defendant who is not a party to the License Agreement or guarantee.  Likewise, the November 1, 2002 License Agreement and its Florida choice of law provision would not appear to be applicable to alleged tortious conduct complained of that predates the Agreement, and which comprises a significant portion of the damages sought.  (See Doc. 1 (Compl.) at ¶¶ 17-26 (recounting conduct pre-dating November 1, 2002, all of which is incorporated into all counts of the complaint),  76-79, 86-89, 91-94 96-100, 102-104, 106-108, 110-112, 114-116.)

A federal district court sitting in Florida and deciding tort claims is required by Florida choice of law rules to apply the "most significant relationship" test to determine the law governing tort claims.  See Green Leaf Nursery v. E.I. DuPont De Nemours and Co., 341 F.3d 1292, 1301 (11th Cir. 2003); Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996).  Here, the "most significant relationship" test is applied to a dispute concerning Japanese defendants and corporations for alleged conduct that took place in Japan.   Furthermore,

resolution of plaintiffs' duty claims (Counts XIII and IX) appears to involve defining duties of officers, directors and majority shareholders of Japanese corporations as defined by governing Japanese law.  Although the Court need not make an explicit finding as to which country's law applies, it appears based on the allegations of the complaint that the alleged fraud and various alleged torts occurred in Japan, the domicile, residence, place of incorporation and business of all of the defendants is in Japan, and the relationship between the parties is centered in Japan, evincing a "significant relationship" there for purposes of applying Japanese tort law.  The strong possibility that Japanese law could apply to the case weighs in favor of dismissal on *forum non conveniens* grounds.  See Ford, 319 F.3d at 1307; Magnin, 91 F.3d at 1430; Lisa, S.A., 441 F. Supp.2d at 1240-41;  Warter, 380 F. Supp.2d at 1315.

In response to Mr. Kashiwagi's declaration that a judgment of this Court may not be enforceable in Japan, plaintiffs contend that "United States' judgments . . . are generally enforced in Japan."  (Doc. 30 at 14.)  Plaintiffs cite the case Creager v. Yoshimoto, No. C 05-01985 JSW, 2006 WL 680555, at *4 (N.D. Cal. 2006), which states that "[a] party seeking to enforce a foreign judgment in Japan must demonstrate that the court issuing the judgment had jurisdiction, as defined by Japanese law, over the defendant," and that the Japanese "jurisdiction requirement will be satisfied if the U.S. court rendering the judgment had reasonable contacts with the defendant or the underlying transaction.'" Id. (citation omitted).

Here, the Court notes that three defendants - Japan Clamp, Sori Industries, and Sori - have challenged the Court's personal jurisdiction over them, arguing that these defendants do not have sufficient contacts under either Florida's long-arm statute or the tenets of due process. (Doc. 17.)  While not deciding the merits of the personal jurisdiction motion, defendants' argument does throw into question the enforceability in Japan of a judgment entered by this Court against those Japanese defendants.

### 4.   <u>Ability to Reinstate Action in Japan</u>

The Court finds, based on the declaration of attorney Kashiwagi, that Plaintiffs can reinstate their suit in Japan "without undue inconvenience or prejudice." <u>See Leon</u>, 251 F. 3d. at 1310-11.  Indeed, Plaintiffs do not argue otherwise.  Corporate defendants Renfroe Japan, Japan Clamp, and Sori Industries have already been haled into Japanese court by Renfroe & Sons on issues related to, and touching on matters raised by plaintiffs' claims here, making any claim of prejudice unconvincing. <u>Lisa, S.A.</u>, 441 F. Supp.2d at 1241.

At the hearing held on these motions, (Doc. 34), the record of which is incorporated herein, counsel for defendants stated that defendants would agree to a conditional dismissal of this case, and to waive jurisdictional and statute of limitations defenses if applicable.  However, if Plaintiffs are unable to reinstate this action in Japan and such decision is affirmed by the highest court in Japan, then this Court will reactivate this case.  <u>E.g.</u>, <u>Ford</u>, 319 F.3d at 1310-11; <u>Warter</u>, 380 F. Supp.2d at

1315-16.

Balancing all factors, including the presumption favoring Plaintiffs' choice of forum, and weighing the relative advantages of the respective forums, and upon due consideration, it is hereby

**ORDERED:**

1.      Defendants Renfroe Japan Co., Ltd. and Yuji Itoh's Motion To Dismiss (Doc. 16), and Defendants Japan Clamp Company, Ltd., Sori Industries, Inc., and Hiroyuki Sori's Motion To Dismiss (Doc. 17) are **GRANTED** on *forum non conveniens* grounds, subject to the following conditions, to which Defendants will be deemed to have agreed unless they seek timely reconsideration of this Order pursuant to Fed. R. Civ. P. 59.

        a)      Each Defendant agrees to accept service of process in Japan and to submit to the jurisdiction of the courts of Japan concerning this lawsuit;

        b)      Each Defendant agrees to exclude the time period during which this case was pending in this Court plus any time which passes between the date of Judgment entered pursuant to this Order and Plaintiffs' re-filing this action in any court in Japan, from any laches or statute of limitations defense (ie. treat the re-filing of this action in Japan as though it had been filed on May 16, 2006, the date it was filed in this Court);

        c)      Each Defendant agrees to be bound by any final judgment, after

37

appeals if applicable, that may be entered against them by the courts of Japan relating to this action.

2.     This action is **DISMISSED WITHOUT PREJUDICE**.  Should Plaintiffs be unable to reinstate this action in Japan, and the highest available Japanese court affirms such decision, the Court will reactivate this action in this forum upon motion by any party, with the date of filing of the lawsuit to be deemed to be May 16, 2006.

3.     The Clerk will close the file, subject to reopening upon proper motion filed by any party.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of September, 2007.


TIMOTHY J. CORRIGAN
United States District Judge


jl
Copies to:
Counsel of Record